UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

JEANIE M. DOVE )
)
V. ) NO. 2:11-CV-351
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security )

## REPORT AND RECOMMENDATION

The matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. Plaintiff's application for Supplemental Security Income was denied following an administrative hearing before an Administrative Law Judge ["ALJ"]. Both the plaintiff and the defendant Commissioner have filed dispositive Motions [Docs. 12 and 14].

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human*

*Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

The plaintiff was 46 years old at the time she filed her application. She has a high school education. Plaintiff has no past relevant work experience. Her severe impairments as found by the ALJ are cervical spine disorder, lupus, degenerative disc disease and syncope [Tr. 14].

Plaintiff's medical history is summarized in the defendant's brief as follows:

> Plaintiff complained of joint and back pain in late 2007 and was diagnosed with right paravertebral muscular strain and chronic upper back pain (350). In February 2008, treating physician Dr. Jason Brazee diagnosed Plaintiff with recurrent neck pain secondary to degenerative disc disease and systemic lupus (Tr. 344).
>
> In June 2008, neurologist Dr. Abdelrahman Mohamed examined Plaintiff in light of her history of back and neck pain (Tr. 256-58). Dr. Mohamed noted a January 2008 MRI showing small left posterolateral spur/disc protrusion at the C5-6 level and a March 2008 MRI showing stable to less prominent soft tissue anterior to the lower right thoracic spine, mild disc degeneration with disc bulges in the mid-thoracic spine, and a small right-sided disc protrusion at the T12-L1 level (Tr. 258). Ultimately, Dr. Mohamed diagnosed backache, pain in the thoracic spine, cervicalgia, thoracic disc displacement, cervical disc displacement, joint pain, and lupus (Tr. 257). He prescribed Lortab (Tr. 258).
>
> In January 2009, Plaintiff reported neck and back pain, leg and toe pain, and migraines (Tr. 238). She reported in March 2009 that her medications helped with her pain (Tr. 235). Two months later, she reported running out of her medications because she took more than the prescribed amount (Tr. 232). She also took extra Lortab in summer 2009 after a motor vehicle accident (Tr. 229). At that time, x-rays showed no fracture of the destructive process, minor spurring at one level, and degenerative change with disc space narrowing at the C5-6 level (Tr. 213-14). In August 2009, she reported her medicine was helping (Tr. 226).
>
> On September 10, 2009, state agency medical consultant Dr. James Millis reviewed the evidence and opined Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently, could stand and walk for a total of 6 hours in an 8-hour day, and could sit for a total of 6 hours in an 8-hour day (Tr. 272-80).

He further opined Plaintiff could occasionally climb ladders, ropes, and scaffold and could frequently reach overhead (Tr. 274-75). He added that Plaintiff should avoided concentrated exposure to heat and sunlight and should avoid all exposure to Coumadin (Tr. 276). On July 9, 2010, Dr. James Moore reviewed and agreed with Dr. Millis' opinion (Tr. 565).

On September 28, 2009, Plaintiff underwent a consultative psychological evaluation (Tr. 281-85). The examiners opined Plaintiff's ability to understand and remember was not significantly limited, and that her ability to sustain concentration and persistence was not significantly limited (Tr. 284). The examiners also opined that Plaintiff's social interaction was limited by mild isolating behaviors and irritability (Tr. 284). On January 5, 2010, state agency psychological consultant Dr. Mason Currey opined Plaintiff experienced only mild limitations and did not have a severe mental impairment (Tr. 471–84).

On April 20, 2010, neurosurgeon Dr. Larry Hartman evaluated Plaintiff and opined that her headaches were based on cervical muscle tension and myofascial pain, exacerbated by anxiety (Tr. 568). On January 20, 2011, rheumatologist Dr. Kevin Myers evaluated Plaintiff and stated she had no symptoms suggesting active lupus and indicated her problems were neurological (Tr. 586-88). Later that month, Dr. David Uskavitch noted an unremarkable brain
MRI and EEG and diagnosed Plaintiff with post-meningitis headache syndrome and somatoform disorder (Tr. 617-19).

In spring 2011, Plaintiff was treated several times for headache or syncope (Tr. 620-34, 695-705). Dr. Brazee noted a history of seizures and ordered an EKG and EEG (Tr. 637). Plaintiff does not appear to have actually undergone these tests (Tr. 190-734). However, a CT scan on April 26, 2011, showed no acute intracranial process (Tr. 719).

[Doc. 15, pgs. 2-4].

Omitted from the defendant's recitation of the medical evidence is a "physical capacity evaluation" from Dr. Brazee dated February 28, 2011 (Tr. 635). The form asks that the completing physician "check only one block to indicate the degree of impairment and/or exertional capacity as relates to the patient's ability for sustained work activity" which is to be based upon the findings of the physician. There are six exertional capacity levels in the form, which are "slight or minimal impairment," "heavy work," "medium work," "light work," "sedentary work," and "less than a full range of sedentary work." The final category, which Dr. Brazee checked, is defined in the form as "claimant cannot perform all the

3

functions of block (5) above." "Block (5)" defines sedentary work as "lifting 10 pounds maximum. Includes occasionally liftin and/or carrying small objects. Involves sitting, a certain amount of walking and standing often necessary in carrying out job duties. Jobs are sedentary if walking and standing are only occasionally and other sedentary criteria are met." *[Sic]*.

At the administrative hearing, after taking the plaintiff's testimony, the ALJ asked certain questions of Dr. Norman Hankins, a vocational expert ["VE"]. The ALJ instructed Dr. Hankins that he was to assume "that the claimant is restricted to sedentary work with no climbing of ladders, ropes or scaffolds; no more than frequent overhead reaching; no concentrated exposure to heat and no exposure to hazards." (Tr. 45). When asked if there were jobs which a person could perform with that residual functional capacity ["RFC"] who was of plaintiff's age and educational level, Dr. Hankins stated that there were 7,500 jobs in the regional economy and 375,000 in the national economy which such as person could perform. (Tr. 46).

The ALJ then asked the VE "to assume the documented limitations that were assigned to the claimant by Dr. Brazee." The ALJ then characterized Dr. Brazees findings as being "that the claimant is incapable of performing sustained work activities for eight hours a day, 40 hours a week on a reliable and consistent basis."[1] When asked if there were jobs a person could perform with those limitations, there would be no jobs. (Tr. 46). Likewise, Dr. Hankins opined that if the plaintiff's testimony was accurate, there would be no jobs she

---

[1] Defendant mistakenly says that it was plaintiff's counsel, and not the ALJ, who "mischaracterized" the evaluation of Dr. Brazee to the VE.

could perform. (Tr. 47).

In his hearing decision, the ALJ went through a quite detailed discussion of the medical evidence in the record (Tr. 14-18) which makes it apparent that the ALJ in fact read all of the medical evidence quite carefully. After finding that the plaintiff did not meet or equal a listed impairment, the ALJ found that she had the RFC "to perform sedentary work...with no climbing ladders/ ropes/scaffolds, no more than frequent overhead reaching, no concentrated exposure to extreme heat, and no exposure to hazards." He found that plaintiff's subjective complaints were not credible to the extent they were inconsistent with the found RFC for a restricted range of sedentary work. He then discussed each of the found severe impairments and how each one impacted her RFC. (Tr. 20-21).

In terms of the opinion evidence, the ALJ first gave great weight to the state agency mental capacity consultants who found no severe mental impairment. With respect to plaintiff's treating physician, the ALJ stated that he had "considered the physical capacity evaluation dated February 28, 2011 from Dr. Brazee in which he indicated the claimant can perform less than a full range of sedentary exertion. The undersigned gives little weight to Dr. Brazee's assessment, as the objective evidence of record does not preclude the performance of sedentary exertion. In fact, the undersigned has given the claimant the benefit of every doubt in limiting her to sedentary exertion." (Tr. 21).

He then discussed the State Agency physical consultants who had opined that the plaintiff could perform a limited range of medium exertion and gave "weight to these opinions only to the extent that they are consistent with the claimant's retained residual functional capacity." (Tr. 21).

5

He then proceeded to further discuss the perceived credibility of the plaintiff's subjective complaints, pointing to her report of daily activities which included washing dishes, dusting, vacuuming, doing laundry, going shopping, watching television, visiting with friends and family, and caring for her own personal needs. (Tr. 21).

Based upon the testimony of Dr. Hankins, the VE, he found that there were a significant number of jobs in the national economy which the plaintiff could perform. Accordingly, he found that she was not disabled. (Tr. 22-23).

Plaintiff first asserts that the ALJ erred in failing to give appropriate weight to treating physician Dr. Brazee. Pointing out the fact that a treating physician is entitled to great weight, and controlling weight if his opinion is uncontradicted, plaintiff asserts that the ALJ ran afoul of Sixth Circuit precedent and the Commissioner's regulations in not giving Dr. Brazee that weight and in failing to adequately explain his reasons for not doing so.

The sole stated reason given by the ALJ was that "the objective evidence of record does not preclude the performance of sedentary exertion." (Tr. 21). It is of course true that for the opinion of the treating physician to be given controlling weight, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and it must "not [be] inconsistent with the other substantial evidence in [the] case record. 20 C.F.R. § 404.1527(d)(2). However, the requirement of giving an explanation is not dispensed with even in a record which does contain substantial evidence to support the Commissioner's finding that an individual is not disabled. In *Wilson v. Commissioner of Social Security* 378 F.3d 541 (6th Cir. 2004), the Sixth Circuit stated "although substantial evidence otherwise supports the decision of the Commissioner in this case, reversal is required because the

6

agency failed to follow its own procedural regulation..." referring to 20 C.F.R. § 404.1527(d)(2). *Id.,* at 544. The Court found that the requirement in the regulations for an ALJ to adequately explain his reasoning in giving little or no weight to a treating physician is a "substantial" procedural right, and that "a court cannot excuse the denial of a mandatory procedural protection simply because...there is sufficient evidence in the record for the ALJ to discount the treating source's opinion..." *Id.,* 546-47. In effect, the Sixth Circuit held that even though there was substantial evidence in the record in that case from the plaintiff himself and the reports of two consultative examiners to support the Commissioner's finding that he was not disabled, reversal was required because the lack of weight given to the treating source's opinion was inadequately explained. An explanation which would have satisfied the requirements of the regulations in the opinion of the *Wilson* Court would have required not only clarification of whether the doctor's opinion was being given little weight because it was inconsistent with "other substantial evidence," but *also* identification of "the evidence supporting such a finding," and the application of that evidence to the factors for weighing treating physician testimony set out in 404.1527(d)(2). *Id.,* at 546.

A similar result was reached in *Hensley v. Astrue*, 573 F.3d 263 (6th Cir. 2009), in which the evidence the ALJ stated he relied upon was an opinion contrary to that of the treating doctor from another physician. The Court stated "nothing in the regulations indicates, or even suggests, that the administrative law judge may decline to give the treating physician's medical opinion less than controlling weight simply because another physician has reached a contrary conclusion." *Id.,* at 267.

In the present case, there is not a great gulf, but only a narrow, subtle degree of

7

difference in the ALJ's RFC finding, between whether the plaintiff is disabled or not. If she is "not disabled" then it is only by the thinnest of margins even by the ALJ's analysis. The ALJ found that she could perform less than a full range of sedentary work. Interestingly, the form checked by Dr. Brazee also merely says that he also opines she can perform less than a full range of sedentary work. What limitations he feels there are is not answered in the wording of the form. It is, as the Commissioner suggests, certainly possible that Dr. Brazee's opinion may actually not be inconsistent with the ALJ's RFC finding. However, assuming that it is inconsistent, which the ALJ presumed was the case, and even with the evidence of the plaintiff's daily activities and the report of the State Agency physician that she could do a reduced range of medium work, similar, if not *better* evidence was in the record in *Wilson* supporting the Commissioner's findings, and the Court *still* required a remand.

The Court notes that *Wilson* pointed out that a failure to explain the weight given may sometimes be harmless error. *Id.,* at 547. And this Court cannot say that if the evidence was overwhelming that the plaintiff was capable of far greater exertional activity than a reduced range of sedentary work, the result in this case might be different, *Wilson* notwithstanding. But in this case, with this record, *Wilson* requires more than a statement that unnamed "evidence of record does not preclude the performance of sedentary exertion." In this regard, the position of the Commissioner is not substantially justified.

Plaintiff also asserts that the ALJ erred in not finding the plaintiff disabled under Social Security Ruling 96-9P, 1996 WL 374185, which addresses adjudication of cases where the claimant can only perform a reduced range of sedentary work. Ultimately, it requires the ALJ, "in more complex cases," to utilize a vocational expert, which is exactly

8

what was done in this case. The Court does not feel that this Ruling in any way mandates a finding of disability.

Finally, with respect to the issue of credibility, insofar as the plaintiff is claiming to be totally disabled, there is substantial evidence from which the ALJ could conclude she is not, including the State Agency reports and her activities of daily living.

However, with the record in this case, the Court is persuaded that *Wilson* requires a remand. Both parties will be able to present further proof on the issue of plaintiff's physical limitations. In that regard, while this Court declines to require it, a consultative examination would seem useful. In any event, a clarification of Dr. Brazee's opinion and a clearer statement by the ALJ on the weight he will ultimately give it are required. It is therefore recommended that the plaintiff's Motion for Judgment on the Pleadings [Doc. 12] be GRANTED to the extent that the case be remanded to the Commissioner for further proceedings. It is also recommended that the Commissioner's Motion for Summary Judgment [Doc. 14] be DENIED.[2]

Respectfully submitted:

  s/ Dennis H. Inman
United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).